# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD BLOOM, D.C. and | : | CIVIL ACTION |
| WEATHER VANE CHIROPRACTIC, P.C., | : | |
| Plaintiffs, | : | |
| | : | No. 14-2582 |
| v. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS *et al.*, | : | |
| Defendants. | : | |

**MCHUGH, J.**                                                                                                          October 24, 2018

## MEMORANDUM

The issue at the heart of this case is the enforceability of anti-assignment clauses in ERISA-governed health insurance plans. Plaintiffs are healthcare providers who brought ten claims against defendant health insurers: four purportedly arising under the federal Employee Retirement Income Security Act ("ERISA") and six supplementary state law claims. Defendants initially moved under Fed. R. Civ. P. 12(b)(1) and (6) to dismiss the entirety of Plaintiffs' First Amended Complaint, challenging Plaintiffs' standing under ERISA. I denied Defendants' motion at that early stage of the litigation because I was persuaded that Plaintiffs alleged a plausible ERISA claim. *Bloom v. Indep. Blue Cross*, 152 F. Supp. 3d 431, 443 (E.D. Pa. 2015). Extensive discovery followed and Defendants now seek summary judgment, once again asserting that Plaintiffs lack standing to sue under ERISA, an argument that now has controlling force in light of a recent Third Circuit decision. Plaintiffs have had ample opportunity to develop their case in the last three years but have failed to unearth additional facts necessary to shore up their counterargument on ERISA standing. More importantly, the Third Circuit has since that time taken up and definitively answered the dispositive legal questions in this case: anti-assignment

clauses in ERISA-governed plans are enforceable and waivable only by a clear, unequivocal, and decisive act. *Am. Orthopedic & Sports Med. v. Indep. Blue Cross*, 890 F.3d 445 (3d Cir. 2018). A straight forward application of the rules articulated in *American Orthopedic* leads me to conclude that Plaintiffs have neither direct nor derivative standing under ERISA with the result that I must grant Defendants' Motion for Summary Judgment on all four ERISA claims. And because I decline to exercise discretionary supplemental jurisdiction over the remaining state law claims, I dismiss the entirety of Plaintiffs' Amended Complaint for lack of standing.

**I.     Factual and Procedural Background**

Plaintiffs are Dr. Howard Bloom, a healthcare provider, and Weather Vane Chiropractic, P.C., Dr. Bloom's medical practice. Pls.' Am. Compl. ¶ 15, ECF No. 11. Defendants are health insurers Independence Hospital Indemnity Plan, Inc. (formerly Independence Blue Cross) and subsidiaries of Independence Blue Cross, LLC: QCC Insurance Company, Keystone Health Plan East, Inc., and AmeriHealth HMO, Inc. Defs.' Am. Answer First Am. Compl. ¶¶ 16-19, ECF No. 32. Defendants insure and administer health benefits for their members under a variety of ERISA-governed healthcare plans. *Id.* ¶ 3. Defendants also contract with healthcare providers to provide medical services to their members at negotiated rates. *Id.*

Dr. Bloom was a participating provider in Defendants' network of healthcare providers from May 2005 to October 2013 and rendered medical services to some of Defendants' members under the terms of their ERISA-governed healthcare plans. Pls.' Am. Compl. ¶¶ 4, 37. Things went fairly smoothly for a number of years: Dr. Bloom and his associates treated patients covered by Defendants' member plans and Defendants made direct payments to Dr. Bloom. *Id.* ¶ 47. But, in 2006, Defendants began disputing covered services and payments due Dr. Bloom. *Id.* ¶¶ 48-58. Dr. Bloom responded by seeking pre-approval of coverage from Defendants before

administering medical treatment. *Id.* ¶¶ 102-105.  That is, Dr. Bloom, through the associates at his practice, began consistently telephoning Defendants' representatives and seeking confirmation that disputed services were indeed covered by member plans—before administering and billing for treatment.  *Id.*  And, consistently, Dr. Bloom received such pre-approval from Defendants' representatives.  *Id.* ¶ 105.

Nevertheless, in 2007, Defendants demanded reimbursement for alleged "overpayments" made to Dr. Bloom for certain procedures and unilaterally "offset" new claims due Dr. Bloom against the alleged past overpayments.  *Id.* ¶¶ 56-58, 100.  Defendants also initiated an audit of Dr. Bloom's billing history by sending a financial investigator to Plaintiffs' offices.  *Id.* ¶ 61.  And, by letter dated September 16, 2013, Defendants unilaterally terminated their agreement with Dr. Bloom.  *Id.* ¶ 107.  But if that weren't enough, Defendants took an aggressive stand and referred allegations of insurance fraud against Dr. Bloom to the state Attorney General.  *Id.* ¶¶ 77-80.  This led to Dr. Bloom's arrest for charges including insurance fraud, theft by deception, and receiving stolen property.  *Id.* ¶¶ 82-83.  Dr. Bloom was acquitted of all charges.  *Commw. Pa. v. Bloom*, No. CP-09-CR-0001341-2012 (Pa. Ct. Com. Pl., Jan. 4, 2013).  He then filed this lawsuit, with his medical practice as co-plaintiff.  Pls.' Compl., ECF No. 1.

Plaintiffs' complaint sought enforcement of their purported rights under ERISA.  Pls.' Am. Compl. ¶ 1.  In addition to four counts under ERISA, Plaintiffs also alleged supplemental state law claims, including breach of the Provider Agreement, promissory estoppel, intentional interference with Plaintiffs' contractual relations with their patients, fraud, negligent misrepresentation, and malicious prosecution.  *Id.* ¶¶ 185-223.

It is undisputed that at least some of Defendants' member plans at issue here are covered by ERISA and that the plan members themselves would have standing under that statute.  Dr.

Bloom asserts that Defendants' plan members transferred their ERISA standing to him via an assignment of rights. Pls.' Resp. Defs.' Mot. Summ. J. 35-36, ECF No. 73. He points to the standard "Financial Policy" form that he arranged for his patients to sign, patients that included Defendants' members. Pls.' Am. Compl. ¶¶ 122-124. This form included the following assignment clause: "For the professional or medical benefits allowable and otherwise payable to me under my current insurance policy as payment toward the total charges for the benefit services rendered. THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY." *Id.* ¶ 122. This assignment of rights, Dr. Bloom contends, included a valid transfer of ERISA standing. Pls.' Resp. Defs.' Mot. Summ. J. 35-36.

But Defendants' members—including those Dr. Bloom alleges transferred their ERISA standing to him via this assignment clause—were also bound by Defendants' member plans which contained *anti*-assignment clauses outlining:

> The right of a Covered Person to receive benefit payments under this coverage is personal to the Covered Person and is not assignable in whole or in part to any person, Hospital, or other entity nor may benefits of this coverage be transferred, either before or after Covered Services are rendered. However, a Covered Person can assign benefit payments to the custodial parent of a Dependent covered under the Booklet/Certificate, as required by law.

Defs.' Mot. Summ. J. 24, ECF No. 67; Defs.' Ex. "E" 3-28, ECF No. 67-2.

Virtually identical clauses were found valid by the Third Circuit in *American Orthopedic* and they form the basis for entry of summary judgment here.

**II.     Standard of Review**

The Defendants' motion is governed by the well-established standard for summary judgment set forth in Federal Rule of Civil Procedure 56, as elaborated in *Celotex Corp. v.*

4

*Catrett*, 477 U.S. 317 (1986). Defendants are entitled to judgment as a matter of law if Plaintiffs fail to make a sufficient showing on the dispositive issue here: Plaintiffs' standing under ERISA.

**III. Discussion**

Defendants once again contend that Plaintiffs do not have standing to bring their ERISA claims. Under *American Orthopedic*, they are correct. I have already ruled that Plaintiffs lack *direct* standing under ERISA and the Third Circuit's opinion in *American Orthopedic* does not require me to revisit that particular ruling. But the Third Circuit went further in *American Orthopedic* and also ruled that healthcare providers such as Plaintiffs here lack *derivative* standing to sue under ERISA where members' healthcare plans contain valid anti-assignment clauses. *Am. Orthopedic*, 890 F.3d at 453. In addition, the Third Circuit rejected cases analogous to this one, where plaintiffs claimed that defendants waived a valid and otherwise enforceable anti-assignment clause through their course of dealing. *Id.* at 454. This new controlling precedent definitively answers the dispositive questions here: plaintiffs lack standing under ERISA due to a valid and enforceable anti-assignment clause which Defendants did not waive through their course of dealing.

> A. <u>Plaintiff healthcare providers do not have *direct* standing to bring ERISA claims.</u>

"ERISA is a 'comprehensive legislative scheme' designed to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries.'" *Am. Orthopedic*, 890 F.3d at 449 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). The statute authorizes "participants," "beneficiaries," "fiduciaries," and the Secretary of Labor to bring civil actions under ERISA. 29 U.S.C. § 1132(a). No one contends that Plaintiffs are "fiduciaries" and they cannot be deemed proxies for the Secretary of Labor. Plaintiffs assert that they are "beneficiaries" and, as such, have standing to sue. Pls.' Resp. Defs.' Mot. Summ. J. 35-38.

5

I have already ruled against Plaintiffs on this issue: they are not beneficiaries with direct standing to bring their claims under ERISA. *Bloom*, 152 F. Supp. 3d at 439. My conclusion was supported by the text of the statute, which defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). My conclusion was recently underscored by the Third Circuit's clarification in *American Orthopedic* that the terms "participant" or "beneficiary" are "limited respectively to employees, current or former, eligible to receive benefits under a covered plan . . . and to persons designated by a participant or the terms of the plan to receive some benefit from the plan." *Am. Orthopedic*, 890 F.3d at 449. "[A] healthcare provider does not fall into either category." *Id.* at 449-450 (*citing Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)). Because healthcare providers are neither participants nor beneficiaries, they do not have direct standing to sue under ERISA.

> B. Plaintiff healthcare providers may have acquired *derivative* standing to sue under ERISA via an assignment of rights from patients who were participants under Defendants' member plans.

Plaintiffs argue that if they don't have direct standing under ERISA, then they have derivative standing via assignment from insured patients who *were* participants under Defendants' member plans. Pls.' Resp. Defs.' Mot. Summ. J. 35-36. Defendants concede, as they must under well-established case law, that "an assignment in an ERISA context may be permissible." Defs.' Mot. Summ. J. 23. The text of the ERISA statute does not address the issue of standing. Nonetheless, in *American Orthopedic*, the Court of Appeals made clear that while the text of the ERISA statute grants only participants or beneficiaries[1] the right to sue for benefits due, a healthcare provider may obtain derivative standing by obtaining an assignment of rights from a plan participant or beneficiary. 890 F.3d at 450 (citing *North Jersey Brain & Spine Ctr.*

---

[1] As well as fiduciaries and the Secretary of Labor.

*v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) ("Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary.")). The assignment "transfer[s] ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf." *Am. Orthopedic*, 890 F.3d at 454 (citing *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 271 (2008)).

In so holding, the Third Circuit also clarified the scope of the transfer of rights. "[A] valid assignment of benefits by a plan participant or beneficiary transfers to such a provider *both* the insured's right to payment under a plan and his right to sue for that payment." *Id.* at 450 (citing *North Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015)) (emphasis added). The scope of standing, then, is broad: a valid assignment can transmit to a healthcare provider both standing to seek benefits and standing to sue for benefits.

The facts of this case parallel those analyzed by the Third Circuit in *American Orthopedic*. That case also involved a healthcare provider suing for violations of ERISA and its implementing regulations. *Id.* at 448. The provider there arranged for a patient covered by insurers' plan to sign a document entitled "Assignment of Benefits & Ltd. Power of Attorney," which reflected that the patient was assigning to the healthcare provider his right to pursue claims under his health insurance plan." *Id.* The Third Circuit determined that this was a valid assignment of benefits from the patient/plan participant to the healthcare provider, transferring to the latter both the participant's right to payment and his right to sue for it. *Id.* at 453.

Here, too, Dr. Bloom, as a healthcare provider, has sued for violations of ERISA and its implementing regulations. First Am. Compl. ¶¶ 152-184. And here as well, the provider arranged for his patients covered by defendant insurers' plan to sign a document reflecting that

7

the patients were assigning to the healthcare provider their rights to pursue claims under their insurance plans. *Id.* ¶ 122. The language of the assignment from Dr. Bloom's patients to him is unambiguous: "For the professional or medical benefits allowable and otherwise payable to me under my current insurance policy as payment toward the total charges for the benefit services rendered. THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THE POLICY." *Id.*

This explicit assignment clause supports Plaintiffs' claim to derivative standing. The assignment clause here, as in *American Orthopedic*, clearly reflected that patients/plan participants were assigning to Dr. Bloom, the healthcare provider, their rights to pursue benefits under their health insurance plans. And, again, the Third Circuit has clearly outlined that the benefits transferred included both the right to payment and the right to sue for payment. *Am. Orthopedic*, 890 F.3d at 450. So, absent a clear and unambiguous *anti*-assignment clause, Plaintiffs would have had a valid assignment of rights, including derivative standing to seek payment and sue under ERISA. *Id.* at 453. Unfortunately for Plaintiffs, there *is* an anti-assignment clause incorporated here which ultimately nullifies their claim to derivative standing.

   C. <u>A valid and enforceable anti-assignment clause in Defendants' member plans means that plan participants couldn't have transferred their standing to Plaintiff healthcare providers in the first place.</u>

Plaintiffs argue that Defendants' members transferred to them their right to sue under ERISA via the assignment clause in the aforementioned "Financial Policy" form. Pls.' Resp. Defs.' Mot. Summ. J. 35-36. Defendants reply that any purported transfers or assignments of rights to Dr. Bloom were invalid because an express anti-assignment clause in Defendants' member plans barred any such transfer or assignment of rights in the first place. Defs.' Mot. Summ. J. 23-26, ECF No. 67.

At the time of my ruling on the pleadings, the Third Circuit had not squarely addressed the dispositive issue here: whether an anti-assignment provision in an ERISA-governed healthcare plan can invalidate a patient's assignment of rights to a healthcare provider. It has since answered yes, in *American Orthopedic*, 890 F.3d. at 453. Because a valid anti-assignment clause invalidates a purported assignment, any purported assignment has no legal effect. *Id.* In *American Orthopedic*, the healthcare provider contended that it had standing to sue "because anti-assignment clauses in ERISA-governed health insurance contracts are unenforceable against healthcare providers." *Id.* at 449. Similarly, Plaintiffs here advance a policy argument supporting this view: that applying anti-assignment provisions to healthcare providers "would undermine ERISA's goal of improving benefit coverage for employees." Pls.' Resp. Defs.' Mot. Summ. J. 36. The Third Circuit took up and rejected these arguments, ruling that, generally, valid anti-assignment clauses in ERISA-governed health insurance plans *are* enforceable against healthcare providers. *Am. Orthopedic*, 890 F.3d at 453. The Third Circuit reasoned that neither ERISA's text, nor congressional policy, nor persuasive authority from other circuits "justify a departure from the general rule that courts will enforce the terms of an agreement that was freely negotiated between contracting parties." *Id.* at 449.[2] The Third Circuit thereby concluded that a valid and enforceable anti-assignment clause prevented the transfer of standing in the first place, writing that, "our holding today that the anti-assignment clause is enforceable means that [the] . . . plan beneficiary[] did not transfer the interest in his claim." *Id.* at 453.

---

[2] The Third Circuit "perceive[d] no compelling reason to stray from the 'black-letter law that the terms of an unambiguous private contract must be enforced.'" *Am. Orthopedic*, 890 F.3d at 453 (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009)). The court also noted the "overwhelming consensus among the Courts of Appeals that 'ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties.' . . . We now join that consensus and hold that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Id.* at 453 (internal citations omitted).

The anti-assignment clause that the Third Circuit found valid and enforceable is nearly identical to the clause at issue here. The anti-assignment clause in *American Orthopedic* read as follows:

> The right of a Member to receive benefit payments under this Program is personal to the Member and is not assignable in whole or in part to any person, Hospital, or other entity nor may benefits of this Program be transferred, either before or after Covered Services are rendered. However, a Member can assign benefit payments to the custodial parent of a Dependent covered under this Program, as required by law.

*Id.* at 448, n.2.

The anti-assignment clause at issue in this case reads as follows:

> The right of a Covered Person to receive benefit payments under this coverage is personal to the Covered Person and is not assignable in whole or in part to any person, Hospital, or other entity nor may benefits of this coverage be transferred, either before or after Covered Services are rendered. However, a Covered Person can assign benefit payments to the custodial parent of a Dependent covered under the Booklet/Certificate, as required by law.

Defs.' Mot. Summ. J. 24; Defs.' Ex. "E" 3-28, ECF No. 67-2.

Because the express anti-assignment clause at issue here is in all relevant respects identical to the one at issue in *American Orthopedic*, I am required to reach the same result as the Third Circuit. The anti-assignment clause here is valid under *American Orthopedic* and therefore barred Defendants' plan participants from assigning their rights—including their standing to sue under ERISA—to Plaintiff healthcare providers here. This differs from my ruling at the pleading stage. But I reached my "somewhat unsatisfying conclusion" at that time because it wasn't clear that the anti-assignment clause here prohibited both the right to receive benefit payments and the right to sue under ERISA. *Bloom*, 152 F. Supp. 3d at 441. That ambiguity is now resolved. In evaluating an anti-assignment clause nearly identical to the one at issue here, the Third Circuit affirmed that, due to the valid and enforceable anti-assignment

10

clause, the plaintiff healthcare provider did not have either the right to receive payments or the right to sue under ERISA. *Id.* at 453.

Plaintiffs have offered no additional argument to circumvent the newly issued ruling from the Third Circuit and I can conjure none. And so I must conclude that the valid and enforceable anti-assignment clause in the ERISA-governed plans here meant that plan participants could not and therefore did not transfer their rights to sue under ERISA to Plaintiff healthcare providers.

D. <u>Defendants did not waive their right to enforce the anti-assignment clause through their course of dealing.</u>

Plaintiffs argue that even if the anti-assignment clause is enforceable, Defendants—through their course of dealing with Plaintiffs—waived their right to enforce the clause and thereby their objections to Plaintiffs' standing. Pls.' Resp. Defs.' Mot. Summ. J. 37. As support, Plaintiffs cite to evidence that they regularly telephoned Defendants' representatives to confirm coverage of contended services and received such confirmation. *Id.* Defendants respond that their mere confirmation of coverage via phone call, without any specific discussion about Plaintiffs' purported assignee status, did not mean that they waived the anti-assignment clause. Defs.' Reply Defs.' Mot. Summ. J. 14. Defendants' argument is persuasive.

The Third Circuit has explained that under the Pennsylvania law controlling here, "a waiver requires a 'clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it,' *Brown v. City of Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962), and routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate 'an evident purpose to surrender' an objection to a provider's standing in a federal lawsuit." *Am. Orthopedic*, 890 F.3d at 454.

In addition to providing examples of insurer conduct that would not constitute waiver—routine processing of a claim form, issuing payment at the out-of-network rate, and summarily

11

denying an informal appeal—the court in *American Orthopedic* also cited with approval cases providing other examples of non-waiver. *Id.* These cases show that even making direct payments to a healthcare provider does not constitute waiver because there is no "evident purpose to surrender'" objections to standing. *Id.* (citing *Emami v. Quinteles IMS*, No. 17-3069, 2017 WL 4220329, at *3 (D.N.J. Sept. 21, 2017) (rejecting claim of waiver where insurer directly remitted payment to the medical provider); *Shah v. Blue Cross Blue Shield of Ala.*, No. 17-700, 2017 WL 4182043, at *3 (D.N.J. Sept. 21, 2017) (stating that "direct payment to a patient or healthcare provider does not constitute waiver")).

At the pleading stage, and in the absence of *American Orthopedic,* Plaintiffs had *plausibly* alleged facts showing that Defendants waived the anti-assignment clause. Substantial discovery has not provided evidence that would support waiver. The most Plaintiffs can allege is that (1) Defendants telephonically confirmed coverage of the disputed services and (2) Defendants continued to pay Plaintiffs for disputed services even after the dispute first arose. Pl.' Resp. Defs.' Mot. Summ. J. 37; Pls.' Am. Compl. ¶ 66. But Defendants' mere confirmation that certain disputed services were covered did not constitute a "clear, unequivocal and decisive act" by Defendants surrendering their objection to Plaintiffs' standing. The Third Circuit flatly rejected cases of alleged waiver where insurers remitted payments to healthcare providers or insureds. *Am. Orthopedic*, 890 F.3d at 454 (citing *Emami v. Quinteles IMS*, No. 17-3069, 2017 WL 4220329, at *3 (D.N.J. Sept. 21, 2017) (rejecting claim of waiver where insurer directly remitted payment to the medical provider); *Shah v. Blue Cross Blue Shield of Ala.*, No. 17-700, 2017 WL 4182043, at *3 (D.N.J. Sept. 21, 2017) (stating that "direct payment to a patient or healthcare provider does not constitute waiver")). These examples dispose of Plaintiffs'

argument that Defendants' continued direct payment for disputed services or their pre-confirmation of coverage constituted waiver.

In the face of a valid anti-assignment clause and insufficient evidence of waiver, the ERISA claims must be dismissed. I decline to exercise supplemental jurisdiction over the remaining state law claims. Supplemental jurisdiction "is a doctrine of discretion, not a matter of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The remaining claims are strictly matters of state law. Where all federal claims are eliminated before trial, a federal court should normally hesitate to exercise jurisdiction unless considerations of judicial economy, convenience, and fairness to litigants counsel otherwise. *Id.* No such considerations are present here. Although this case has been extensively litigated in the federal court system, no trial date has been set. The discovery performed in this action can be utilized in state court, where the matter can promptly be certified by counsel as trial ready under Bucks County Local Civil Note 261. And Plaintiffs fully retain the ability to take their remaining claims to an appropriate state forum, in particular their challenge to Dr. Bloom's criminal prosecution.

## IV. Conclusion

For the foregoing reasons, I grant Defendants' Motion for Summary Judgment and dismiss Plaintiffs' Amended Complaint in its entirety, without prejudice, to allow for an appropriate transition to state court, pursuant to 42 Pa. Cons. Stat. § 5103(b) (2004), or *Artis v. District of Columbia*, 138 S. Ct. 594 (2018).

    /s/ Gerald Austin McHugh
United States District Judge